NEUGENT GARMENT COMPANY, Respondent, vs. UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant.

*March 5—June 23, 1930.*

For the appellant there were briefs by *North, Parker, Bie, Duquaine, Welsh & Trowbridge,* attorneys, and *Samuel D. Hastings* of counsel, all of Green Bay, and oral argument by *Rodney C. Welsh.*

For the respondent there was a brief by *Kittell, Jaseph, Young & Everson* of Green Bay, and oral argument by *E. L. Everson.*

The following opinion was filed April 1, 1930:

STEVENS, J. (1) The first question presented is what liability was imposed upon the defendant by the undertaking given for the purpose of securing a release of the attachment. This question is no longer an open one in Wisconsin. In *Dierolf v. Winterfield,* 24 Wis. 143, 144, it was held that a defendant in attachment must elect whether to trav-

erse the attachment or to give an undertaking for the release of the property, and that the giving of the undertaking was a waiver of the right to traverse. Thereafter the statute, which is now sec. 266.16, was amended by adding thereto: "the defendant, notwithstanding the delivery of such undertaking, may deny any or all of the allegations of the affidavit annexed to the writ of attachment as provided in section 266.19."

The plaintiff relies upon the provision of the undertaking by which the defendant agreed to "pay . . . the amount of the judgment" that might be recovered by the plaintiff. In *Thompson v. Royal Indemnity Co.* 197 Wis. 43, 46, 48, 221 N. W. 415, it was held that the amendment to sec. 266.16 of the Statutes referred to above permitted the defendant in attachment proceedings to avail himself of both the traverse and the undertaking to secure a redelivery of the property, and that the statute "no longer permits the attaching creditor to maintain that the mere recitals in such a statutory bond as we have here estop or bar the defendant from questioning the validity of the attachment through the traverse, or the surety from relying upon such a successful traverse. . . . In practical effect the giving of an undertaking such as is here involved, even though it be absolute in terms, is no more than a substitute for the attached property."

In the case just cited it was held that there was no right to attach. But the rule that the undertaking stands in the place of and is a mere substitute for the property attached applies with equal force to all cases in which the right to maintain attachment is defeated by any other means or upon any other ground. It follows that plaintiff's right to recover on the undertaking is defeated by the same facts that would defeat recovery by the plaintiff on the attachment, if the undertaking had not been given.

(2) The case does not involve a voluntary conveyance or

transfer of property made with intent to hinder, delay, or defraud creditors. The lien here in question was secured by operation of law—by attachment. It is therefore controlled by sub. (f) of sec. 67 of the Bankruptcy Law and not by sub. (e) of that act. Under the provisions of sec. 67 (f) of the Bankruptcy Act the lien of an attachment which is obtained within four months prior to the date of the filing of the petition in bankruptcy is dissolved when the attachment debtor is adjudged a bankrupt, provided the debtor was insolvent at the time of attachment.

"Under the Bankruptcy Act, the insolvency of the attachment debtor, at the time of the levy of the attachment, is a prerequisite to the avoidance of the attachment." *Straus v. Fidelity & Deposit Co.* 143 S. C. 422, 141 S. E. 683, 684. The provision of the Bankruptcy Act avoiding liens secured within four months prior to the date of filing the petition "applies only to liens obtained in legal proceedings against a person who was 'insolvent' when the lien was acquired. If the debtor was then solvent, the lien is not invalidated although it was obtained within four months prior to the filing of the petition in bankruptcy. . . . To invalidate the lien the person challenging it must show that the debtor was insolvent when it was obtained. . . . Such insolvency must be both alleged and proved. . . . Generally, an adjudication in bankruptcy in no way determines whether or not the debtor was insolvent at the time a lien was obtained through legal proceedings against him; there being no presumption arising from the adjudication that he was insolvent for any period before the petition in bankruptcy was filed." *Liberty Nat. Bank v. Bear,* 265 U. S. 365, 369–70, 44 Sup. Ct. 499, 68 Lawy. Ed. 1057, 1060.

It follows that the allegation that Millard's Inc. was adjudged a bankrupt within four months after the attachment does not state a defense, because it is not alleged that the

bankrupt was insolvent at the time that the attachment was levied. This failure to allege insolvency renders the answer subject to demurrer.

*By the Court.*—Order affirmed.

The following opinion was filed June 23, 1930:

STEVENS, J. (*on motion for rehearing*). The motion for rehearing presents a question not considered when the case was decided,—that is, whether the bankruptcy of Millard's Inc. discharged the surety on the bond given to release the debtor's property from attachment.

The rule is well established that the purpose of sec. 67 (f) of the Bankruptcy Act, so far as it avoids liens obtained through legal proceedings within four months prior to the filing of the petition in bankruptcy, is to secure an equitable distribution of the bankrupt's assets among his creditors, and that only the trustee and those claiming under him can avail themselves of this provision of the Bankruptcy Law. Black, Bankruptcy (4th ed.) § 935; *Frazee v. Nelson,* 179 Mass. 456, 460, 61 N. E. 40; *Rochester L. Co. v. Locke,* 72 N. H. 22, 54 Atl. 705, 706; *Kobrin v. Drazin,* 97 N. J. Eq. 400, 128 Atl. 796; *Equitable Credit Co. v. Miller,* 164 Ga. 49, 137 S. E. 771, 772; *Smith v. First Nat. Bank,* 76 Colo. 34, 227 Pac. 826; *Swaney v. Hasara,* 164 Minn. 416, 205 N. W. 274, 276.

This is not a case in which the surety is seeking to invoke the benefit of sec. 67 (f) of the Bankruptcy Act on its own behalf. That it cannot do. The defendant is relying upon the fact that the trustee has taken possession of the property attached and that he is now claiming title to the same, freed from the lien of attachment.

The bond sued on here is not an independent obligation to pay plaintiff's judgment. It, "even though it be absolute

in terms, is no more than a substitute for the attached property." *Thompson v. Royal Indemnity Co.* 197 Wis. 43, 48, 221 N. W. 415. Any proceeding which results in a dissolution of the attachment or which vests the title to the attached property in the trustee in bankruptcy, freed from the lien of attachment, effectually releases the surety on the bond here in question. "Whatever destroys the attachment destroys all liability upon the bond." *Simon Casady & Co. v. Hartzell,* 171 Iowa, 325, 151 N. W. 97, 99.

To ascertain the liability of the surety the court must look beyond the form of the bond to the purpose sought to be accomplished when it was given. The purpose was not to put the plaintiff in a more favorable position than it would have been in had the bond not been given. The purpose was to secure to the plaintiff the benefit of its attachment by placing it in the same position that it would have been in had the bond not been given. Had no bond been given, if Millard's Inc. was insolvent at the time of the attachment, the bankruptcy would avoid the attachment and the property attached would have been subjected to the payment of the claims of all creditors.

The plaintiff is now in precisely the same position that it would have been in if no bond had been given. It has lost no rights through the giving of the bond. It has gained none that it would not have possessed had the bond not been given.

*By the Court.*—Motion denied, with $25 costs. Former mandate confirmed.