Dr. A. G. Gunter, Appellant, v. Mary Cascio and Steve Cascio, Appellees.

Gen. No. 10,272.

Opinion filed October 14, 1948. Released for publication November 2, 1948.

B. Jay Knight, Frederick H. Haye and Thomas A. Keegan, all of Rockford, for appellant.

James M. Brown and Robert F. Marshall, both of Rockford, for appellees.

Mr. Presiding Justice Wolfe delivered the opinion of the court.

Dr. A. G. Gunter is a duly licensed dentist and has been practicing his profession in the City of Rockford for more than 20 years. Some time in June 1946, Mary Cascio, age 53, called upon him for the purpose of having a set of false teeth made by Dr. Gunter. Dr. Gunter examined her mouth and found that her natural teeth had been extracted some considerable time be-

fore, and took an impression in wax and made an upper and lower set of dentures. The charge for the same was $200, which is not disputed, was a fair and reasonable charge for such work in the City of Rockford. Mary Cascio made partial payments to the doctor, reducing the amount to $139. She refused to pay this amount, claiming that the teeth did not fit, and that she could not use the same. Dr. Gunter started suit before a justice of peace in Rockford for this amount. The doctor was unsuccessful in the justice court and appealed the same to the circuit court, where the case was tried before a jury, which found in favor of the defendants, and judgment was entered accordingly. It is from this judgment that the appeal has been perfected to this court.

It appears from the evidence that the first lower dentures were not satisfactory; that Mrs. Cascio complained that they hurt her, and on October 4, 1946, Dr. Gunter made her a new lower set. Mrs. Cascio complained that the new teeth were unsatisfactory also; that they hurt her, and that she was embarrassed when eating, and had to leave the table; that the teeth jumped out when she sneezed; that she took them out whenever they hurt her, and did not wear them all the time. Mr. Cascio testified she slobbered at the table. She later returned the dentures to Dr. Gunter.

On direct examination at the close of the testimony of Mrs. Cascio, this question was asked: "State whether or not these teeth did fit you or not." Over the objection of the plaintiff, she was permitted to answer: "They didn't fit me." Dr. Gunter testified that he was a licensed dentist in the State of Illinois, and a graduate of Northwestern University Dental School; that he taught operative dentistry two years after his graduation, and that he had practiced his profession in Rockford for 22 years; that he had made plates and teeth during his practice; that Mary Cascio was a patient of his, and that he made an upper and

lower set of teeth for her in the usual ordinary way that teeth are made; that he used the most modern method, and exercised the same skill ordinarily used by other dentists in making teeth; that the balance of the bill that Mrs. Cascio owed was $139; that he examined her mouth before he took the impressions for the teeth, and afterward saw the teeth in her mouth, and in his opinion, they fit her; that when a person sneezes any false teeth plate may come out; that when a person using false teeth· sneezes, the plate is loosened, and may drop out; that this is no indication that teeth do not properly fit, and are not properly made; that both the upper and lower teeth that he made for Mrs. Cascio were properly made, and properly fit her; that people first using false teeth have some soreness as a rule; that they usually expect to make some adjustment after the teeth are first fitted to the patient's mouth, and· the patient having pain does not indicate that the teeth are not properly made, and do not properly fit the patient. Dr. Gunter denied that he ever told Mrs. Cascio that he had done everything he could to make the teeth fit, and that she should go to some one· else if she wanted to, or that Mrs. Cascio ever told him the teeth didn't fit, and that they were not satisfactory.

Dr. Clarence E. Werner was called as a witness on behalf of the plaintiff, and testified that he was a licensed dentist in Rockford, Illinois, and had been practicing his profession since 1919. He also was a graduate of the Northwestern University Dental School; that he makes both upper and lower teeth; that it is usual for a person who has never worn false teeth before, to complain that they hurt from time to time; that in his opinion, no part of the body, is as tender as the tissues of the mouth; that just a little rub will cause a burn or sore mouth, and a dentist has to make adjustments; that the mouth is one of the most tender parts of the body and reacts more to any kind of pres-

sure. The teeth in question were shown to him, and he stated the teeth looked well made to him; that they are in alignment; that sometimes it takes patients years to get used to false teeth and others a very short time.

The court, on behalf of the defendants, gave the jury the following instruction: "The Court instructs the jury that where the buyer purchases from the seller goods to be manufactured by the seller, and it appears that the seller knows the particular purpose for which the goods are required, and where it appears that the buyer relied upon the seller's skill or judgment, then there is an implied warranty on the part of the seller that the goods to be manufactured by the seller will be reasonably fit for such purpose." It is insisted by the appellant that the giving of this instruction was reversible error. In the case of *Berry-Kofron Dental Laboratory Co. v. Smith,* 345 Mo. 922, 137 S. W. (2d) 452, it is stated: Action for a declaratory judgment by which plaintiff sought to have the court declare it not to be engaged in the purpose of selling tangible personal property at retail, as defined by the Sales Tax Act of the State of Missouri. The syllabus is as follows: "A dental laboratory company manufacturing dentures exclusively for dentists furnishing prescriptions and impressions of mouths of their patients was not engaged in business of selling tangible personal property at retail to user or consumer, and hence was not subject to sales tax, whether company be regarded as rendering skilled service to dentists with the value of materials used only incidental, or whether transaction be regarded as sale of manufactured denture by company to dentist, since patient and not dentist was the consumer."

In the case of *Semler v. Oregon State Board of Dental Examiners,* 294 U. S. 608, 79 L. Ed. 1086, 55 Sup. Ct. 570, the case involved the constitutionality of the State of Oregon's law relative to the practice of den-

tistry. In the opinion, we find this language: "The legislature was not dealing with traders in commodities, but with the vital interest of public health, and with a profession treating bodily ills and demanding different standards of conduct from those which are traditional in the competition of the market place. The community is concerned with the maintenance of professional standards which will insure not only competency in individual practitioners, but protection against those who would prey upon the public." This language was quoted with approval in the case of *Lasdon v. Hallihan*, 377 Ill. 187.

In the case of *Babcock v. Nudelman, Director of Finance*, 367 Ill. 626, the question arose whether: The Retailers' Occupation Tax Act applies to optometrists in the furnishing of tangible personal property such as eyeglasses to a purchaser. In discussing the matter, the Supreme Court uses this language: "If it becomes necessary for a physician to furnish medicine or surgical dressings, in effecting a cure, he certainly does not thereby come within the designation of those engaged in a calling which would result in the imposition of a retail tax. The same reasoning applies to dentists even though that calling requires the furnishing of certain inlays, fills, or crowns, or even false teeth, if necessary to a completion of the dental service."

In the case of *Commonwealth v. Miller*, 337 Pa. 246, 11 A. (2d) 141, 142, we find the following: "We are not impressed by the argument that an optometrist who sells glasses and mountings is in the position of a dentist who sells bridgework, or of a doctor who supplies medicine to his patient. In these instances the Commonwealth has very correctly not attempted to collect the mercantile tax. The dentist makes molds and then out of raw materials, metals of various kinds, and artificial teeth, partly prepared for him in dental laboratories, plies them and creates them into structures to conform with the mouth and gums,

to make them as nearly like the original teeth and settings which they are to replace. This involves scientific work, labor, and design on the part of the dentist, creating out of the necessary materials the finished product required by the patient, as a substitute for the natural teeth which he has lost. It constitutes a very large part of the personal work of a dentist.'' There are other cases of like effect, and it is our conclusion that Doctor Gunter was not engaged in selling false teeth to the defendant, but his charges were for his skill and knowledge for his personal work in the examination, and making of the dentures in question. The instruction given was erroneous.

Over the objection of the plaintiff, as before stated, the defendant was allowed to testify that the teeth did not fit her. In the case of *Holsapple v. Scofield,* 176 Wis. 649, 187 N. W. 682, the facts were very similar to the case we now have under consideration, and in the opinion we find the following: ''If the plaintiff performed the dental services for the defendant and did the same in good workmanlike manner in accordance with the recognized and established practice of those in the same profession in his locality, he became entitled to the reasonable value of his services.

''We must hold in this case that the issue here presented was one upon which expert rather than lay evidence was necessary. *Krueger v. Chase,* 172 Wis. 163, 168, 177 N. W. 510. The testimony of those familiar with that kind of work and services was all one way and to the effect that it was in accordance with the recognized standard of skill in that locality.''

It will be noted that in this case it was held that whether the teeth fit was for expert testimony, and not for the defendant alone to say they did not fit. Mrs. Cascio was allowed without objection to state that the teeth hurt her, and were not satisfactory, but we think that whether they actually fit or not, was a question for expert testimony, and for the jury to decide whether the teeth did fit according to dental stan-

dards. We are aware that one case has held differently to the Wisconsin case, but it is our conclusion that the law, as there stated, is the proper one to be followed.

For the errors above stated, the judgment should be, and is hereby reversed, and the cause remanded.

*Reversed and remanded.*