DeSHAM, Appellant, vs. TAUGHER, Respondent.

*March 12—April 8, 1924.*

*Physicians: Malpractice: Faulty diagnosis: Evidence: Sufficiency.*

1. In an action against a physician for malpractice, evidence that many other physicians of admitted skill and experience who had treated plaintiff did not discover the source of an infection is *held* to warrant the refusal of the trial court to submit to the jury the question whether defendant was negligent because of his failure to discover the source of the infection in making his diagnosis. p. 449.

2. Although plaintiff claimed that the physician was negligent in cracking or breaking the superior maxillary bone while operating on him, thus causing the infection, the evidence is *held* insufficient for the submission to the jury of the question of such negligence, it being purely speculative as to whether bone fragments subsequently removed had become detached by pressure from some instrument or by pus action.   p. 450.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Affirmed.*

In this action for alleged malpractice a verdict was directed for the defendant.

Plaintiff, a strong, healthy man of thirty-two years of age, never before having had any noticeable trouble with his face or teeth other than the pulling of the right wisdom tooth some three years before, consulted defendant October 6, 1920, after about a week of severe pain, the seat of which he now locates as having been above the left eyebrow. Defendant, after an examination, concluded that there was an infection of the left antrum, a cavity in the maxillary or upper jaw bone. The nostrils were cleaned of the accumulated pus on several occasions and then an opening made from the nostril into the left antrum for drainage purposes and it was washed out several times with hot water, and from the discharge on October 20th appeared to defendant to be then clear. The plaintiff testifies that on one of his treatments by the defendant between these dates the defendant inserted a sharp instrument about seven inches long in his nostril, at the time telling plaintiff that he, defendant, intended to open the left frontal sinus or cavity just above the eyebrow. Plaintiff testifies that he felt as though there were then a giving or cracking of the bone. The defendant testifies, however, that he at no time used an instrument that came near the superior maxillary or the frontal sinus. The pain continued, however, and with considerable swelling in the cheek under and surrounding the left eye. The defendant lanced the skin near the eye to permit the gathered pus to be removed and continued

such treatment until the plaintiff left his care about November 24th. Then an eye specialist treated him for some time by keeping an opening for the discharge of pus in an attempt to reduce the swelling and pain. During this period he was examined by three other specialists and was under treatment for brief intervals by two others.

January 20, 1921, he placed himself under the care of a specialist, Dr. Dier, who continued almost daily treatments for four months in an effort to reduce the swelling and discover, if possible, the source of the continued infection. X-rays were taken in February, showing an increased density in the left frontal sinus and the left antrum. During the period of this treatment portions of each of the lower and middle turbinate were removed, they having shown signs of infection and being considered a possible source of the trouble. Three other physicians examined plaintiff during this period at Dr. Dier's suggestion. The pain and swelling, however, continued, and about March 20th Dr. Dier made an exploratory incision near the inner lower corner of the left eye to determine if possibly the seat of the infection was in the tear duct, and in so doing, upon reaching the superior maxillary, fragments of detached bone were discovered and removed. At intervals between then and about September 25th other fragments of infected bone were removed from the same opening and one small piece from an opening about an inch away from the nose. After the last of such fragments was removed the pain and swelling subsided.

Dr. Dier testified that from the shape and condition of the fragments of bone so removed by him it was his opinion that a portion at least of such superior maxillary bone had been cracked or broken by pressure exerted from inward. That through the weakened resistance caused thereby such bone became more susceptible to infection, causing a continued spreading of the infection and accumulation of pus. He said also that such detaching or cracking of the bone

DeSham v. Taugher, 183 Wis. 446.

might have been caused by an improper use of an instrument in operating on the antrum.   On further examination he said that he could not state as a positive fact that the portion of the bone so removed had been broken by physical force rather than by pus.

The late Dr. Daniel Hopkinson, testifying on behalf of the defendant after an examination of the fragments of the bone above spoken of which had been received in evidence, said that they showed that they were infected and their form changed by reason of infection before any pressure had been exerted upon them, if any such had been used.

From the judgment for defendant plaintiff has appealed.

For the appellant there was a brief signed by *W. B. Rubin* of Milwaukee, of counsel, and oral argument by *Mr. Rubin.*

For the respondent there was a brief by *Freeman & Bendinger* and *Lines, Spooner & Quarles,* all of Milwaukee, attorneys, and *McGovern, Hannan, Devos & Reiss* of Milwaukee, of counsel, and oral argument by *Francis E. McGovern, Willet M. Spooner,* and *Henry J. Bendinger.*

ESCHWEILER, J.   Plaintiff's contention that there should have been given to the jury the question of whether defendant failed in his duty in making his diagnosis when plaintiff came to him in October, 1920, cannot be upheld. The history above recited of this evidently unusual but extremely unfortunate case shows that, while the defendant did not discover the original source of the infection then present, neither could nor did the many other physicians of admitted skill and experience in that vicinity during their observations and treatments of many months.   These others had the same opportunities for discovery that were possible to defendant, and plainly he could not be said to have shown a failure to use the reasonable care and skill which the law requires.   *Jaeger v. Stratton,* 170 Wis. 579, 581, 176 N. W. 61.

Plaintiff further insists, however, and much more strenu-

ously, that there was a jury question presented as to whether or not there had been a negligent cracking or breaking of the superior maxillary bone by defendant when operating on the plaintiff.

If such had been submitted and determined in plaintiff's favor it could have been supported only by that part of Dr. Dier's testimony to the effect that if an instrument such as the defendant testified he did use had been used in a manner unusual and unnecessary for such an operation, and force had been applied to it, using a portion of the bone as a fulcrum, there could have been produced a break or crack in the superior maxillary.

Such a finding, however, if it had been made, could not have stood. It would have been purely speculative, under the evidence, as to whether any such force had been so negligently applied. By Dr. Dier's further testimony it became pure conjecture whether the bone fragments which he removed had become detached by pressure from some instrument or by pus action. In such a situation the plaintiff has not supplied the quantum of proof the law requires in order to establish liability of a defendant in this class of cases. *Matuschka v. Murphy,* 173 Wis. 484, 180 N. W. 821. Furthermore, it would be inconsistent with the undisputed fact that there was infection already present before defendant performed anything in the nature of an operation on plaintiff, and which infection, under the undisputed evidence, might have accounted for all of the unfortunate sequence.

*By the Court.*—Judgment affirmed.